**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————

|  |  |
|---|---|
| **LEON MIDDLETON,** | ) |
|  | ) |
| **Petitioner,** | ) |
|  | ) |
| *- against -* | ) |
|  | ) |
| **R. RIVERA, SUPERINTENDENT,** | ) |
| **COXSACKIE CORRECTIONAL FACILITY** | ) |
|  | ) |
| **Respondent**. | ) |

**05 Civ. 3145 (SCR) (LMS)**

**REPORT AND**
**RECOMMENDATION**

———————————————————————

**TO:   THE HONORABLE STEPHEN C. ROBINSON,**
**        UNITED STATES DISTRICT JUDGE**

Pro se petitioner Leon Middleton ("Petitioner") files this petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254 (the "Petition"), challenging his conviction for one count of

manslaughter in the first degree and two counts of criminal possession of a weapon in the second

degree.  S: 2.[1]  Petitioner is currently incarcerated at Eastern New York Correctional Facility in

Napanoch, New York, where he is serving a sentence of 15 years for the crime of manslaughter

in the first degree and 10 years for each count of criminal possession of a weapon in the second

degree, all to run concurrently.  S: 23-24.

The Petitioner seeks habeas relief claiming that his conviction was obtained in violation

of his Sixth Amendment confrontation rights, his right to proof of guilt beyond a reasonable

---

[1]The abbreviation "S" followed by a page number refers to the relevant pages of the transcript from the sentencing hearing held on October 4, 2002.  The abbreviation "T" followed by a page number refers to the relevant pages of the transcript from Petitioner's non-jury trial beginning on August 6, 2002.

1

doubt, and by use of an impermissibly suggestive out-of-court identification . (Pet. ¶ 12.) For the reasons set forth below, I conclude, and respectfully recommend that Your Honor should conclude, that this petition for a writ of habeas corpus should be denied.

## I.   BACKGROUND

### A.   The Crime

Evidence presented at trial showed that during the relevant time period, Petitioner was living with his girlfriend, Thyais Gist ("Thyais"), and their two daughters in Yonkers, New York. T: 621-22.  Walter Gist ("Walter"), was staying with his sister, Keyanna Gist ("Keyanna"), at an apartment that was also in Yonkers, New York. T: 437.  Walter and Keyanna are Thyais' cousins.  T: 438.

On May 4, 2001, Keyanna's and Thyais' children had a fight on the school bus.  T: 443. Keyanna called Thyais later that day to discuss the altercation.  T: 445-47.  On May 5, Thyais went to Keyanna's apartment to continue their discussion.  T: 448.  Thyais and Keyanna began arguing and Keyanna threw Thyais out of her apartment.  T: 449.

On May 7, 2001, Keyanna and Walter encountered Petitioner and Thyais outside the mini-mart attached to Keyanna's apartment building.  T: 456.  Keyanna and Thyais began arguing again.  T: 458.  As the argument progressed and the parties walked away from the mini-mart, Petitioner and Walter became involved.  T: 465.  At some point, Keyanna's and Thyais' argument became physical.  T: 466.  Walter then began punching Petitioner in the face.  T: 467-68.  Petitioner thus drew his gun and shot Walter in the chest.  T: 471.  Walter fled to a friend's apartment, where he collapsed.  (Respondent's Affidavit in Opposition, herein "Aff. In Opp'n." at 5-6.)  Walter arrived at the hospital approximately thirty minutes after being shot and died

2

shortly thereafter.  (Aff. In Opp'n. 6.)

**B.**   **The Trial**

Following his arrest, Petitioner was indicted on two counts of murder in the second degree and two counts of criminal possession of a weapon in the second degree.  (Aff. In Opp'n. 1.)  Petitioner waived his right to a jury trial and was tried before the Honorable James R. Cowhey.  T: 2-3.

Prior to trial, a consolidated <u>Wade</u> and <u>Huntley</u> hearing was held to determine the admissibility of testimony regarding certain identifications and post-arrest statements made by Petitioner.  The only aspect of the hearing relevant to Petitioner's habeas motion is the admissibility of Joseph King's ("Mr. King") identification.  During the hearing, Detective Deering testified that he transported Mr. King from the crime scene to the police station.  T: 80. Upon arriving at the police station, Detective Deering signaled for the officers holding Petitioner to bring Petitioner out of the police car.  T: 80.  Detective Deering asked Mr. King if he recognized Petitioner and Mr. King identified Petitioner as the man who shot Walter.  T: 80. Detective Deering also testified that it appeared that Mr. King knew Petitioner prior to the shooting, but did not know his name.  T: 81.

At the conclusion of the hearing, Petitioner's counsel argued that Mr. King's identification of Petitioner should be suppressed.  T: 296.  According to Petitioner's counsel, the "show-up ID" was suggestive, and a lineup or photo array would have been a more appropriate way for Mr. King to identify a suspect.  T: 296.  Additionally, Petitioner's counsel moved to preclude all other witness identifications as being unduly suggestive.  T: 297.

The Court ruled that Mr. King's identification was not unduly suggestive.  T: 319.

Specifically, the identification was made shortly after Mr. King witnessed the shooting and, therefore, the witness's recollection was fresh.  T: 320. The witness also knew the petitioner prior to this incident.  T: 320.  The Court concluded that the police did not engage in any suggestive behavior and that the identification was the product of independent recollection. T: 320.  The Court further ruled that the photo identifications made by Yves Alrich, Wade Wallace, Rasheeda Graham, and Keyanna Gist were not suggestive and did not violate Petitioner's due process rights.  T: 321.  The Court found that the police did not engage in any suggestive behavior during the identifications, the photo arrays were reasonable, and all of the identifications were merely confirmatory.  T: 321-22.  Additionally, Justice Cowhey found that the Petitioner's post-arrest statements were admissible.  T: 318-19.

During opening statements, Petitioner's counsel conceded that Petitioner shot Walter.  T: 330.  Specifically, Petitioner's counsel stated "this is not a whodunit case, this is a case about why the act was done."  T: 330.  Petitioner's position was that Walter was the initial aggressor and Petitioner acted in self-defense.  T: 332-33.

At the beginning of the State's case, the testimony produced at the Wade/Huntley hearing was stipulated into evidence.  T: 333-334.  The prosecution then called Dr. Margaret Prial to the stand.  T: 334.  The Court accepted Dr. Prial as an expert in the field of forensic pathology.  T: 336-37.  Dr. Prial testified that after conducting an autopsy, in her professional opinion, Walter died as the result of a gunshot wound to the chest.  T: 341.  Specifically, Dr. Prial testified that Walter bled to death after the gunshot wound damaged the victim's right pulmonary artery and lung.  T: 352.  However, Dr. Prial stated that she did not examine the right pulmonary artery and lung herself, as they were removed from the Victim's body by the treating physicians at Jacobi

4

Medical Center.  T: 352-53.  Rather, the surgeon's assistant reported to an investigator in Dr. Prial's office that the lung had a bullet wound through it and the right pulmonary artery had a defect in it.  T: 339, 356, 380-81.  Furthermore, Dr. Prial testified that it was typical that organs removed during treatment would not be forwarded to the medical examiner along with the body. T: 347.  On cross examination, Dr. Prial testified that she did not personally review the medical records from the treating hospital before preparing her autopsy report.  T: 356.

Subsequent to Dr. Prial's testimony, Petitioner's counsel made an "application" disputing Dr. Prial's determination of the cause of death. T: 361.  Petitioner's counsel argued that there was a "double hearsay situation" and therefore, Dr. Prial's testimony was unreliable.  T: 361. The "double hearsay" resulted from the treating doctor speaking to Dr. Prial's investigator, who then relayed the information to Dr. Prial, and Dr. Prial using that information in determining the cause of death.  T: 362.  Petitioner's counsel went on to say that the district attorney might be able to cure the problem, but as the testimony stood, Dr. Prial's testimony should not be received.  T: 363.

The parties consented to recalling Dr. Prial to cure any deficiencies in her testimony.  T: 371-72.  The Court stood in recess while Dr. Prial was given a chance to review Walter's medical records.  T: 372.

Upon Dr. Prial being recalled, the State moved Walter's medical records from Jacobi Medical Center into evidence.  T: 373.  Petitioner's counsel did not object to the records' admissibility, but did not concede to the truth of any of the facts contained therein.  T: 373.  On that basis, the medical records were admitted into evidence.  T: 373-74. Dr. Prial went on to testify about the injuries to Walter's right lung and right pulmonary artery as described in his

medical records.  T: 375.  Dr. Prial testified that the medical records supported her conclusion as to the cause of death.  T: 375.

Dr. Prial also testified that she did not need to examine the lung to know that the bullet went through the lung.  T: 383-84.  Because of where the bullet entered Walter's chest and where the bullet was ultimately found, Dr. Prial knew that the bullet would have had to intersect the lung.  T: 384.  Dr. Prial also testified that had the pulmonary artery not been damaged, the injury to the lung alone would have likely still caused Walter to die.  T: 385.

At the end of Dr. Prial's testimony, Petitioner's counsel, while not asking for a ruling, again made an "application" claiming that Dr. Prial's testimony was unreliable.  T: 388-89. Again, Petitioner's counsel argued that because Dr. Prial did not examine the removed organs and their corresponding injuries herself, did not read the Victim's medical records until the day she testified, and considered third-hand information when reaching her ultimate decision as to cause of death, her testimony was not reliable.  T: 388-89.  No ruling was made at that time.

The prosecution then put forth two additional eyewitnesses to the shooting, Keyanna Gist and Mr. King.  T: 471, 544.  Both witnesses identified Petitioner as the shooter.  T: 471, 544. Mr. King testified that a detective brought him to the station and had him identify the Petitioner outside of the station. T: 556.  Mr. King stated that he knew Petitioner prior to that day as Thyais' boyfriend.  T: 557.

 At the close of the state's case, Petitioner's attorney moved for an order of dismissal, on the ground that the State failed to produce any evidence establishing causation aside from the alleged hearsay testimony from Dr. Prial.  T: 611.  The Court found that there was sufficient evidence to establish the cause of death and denied Petitioner's motion.  T: 617.

Petitioner called Thyais Gist to testify.  T: 619.  Thyais testified that she heard the gunshot but did not see who fired the shot or who was shot.  T: 649.  However, during cross-examination, Thyais did state that she knew that Petitioner shot Walter.  T: 659.  Lastly, Petitioner testified on his own behalf.  T: 754.  According to Petitioner, Walter suddenly punched the Petitioner three times in the eye.  T: 800.  Petitioner believed that Walter was armed with a knife and had actually cut his face rather than punching him.  T: 801.  Petitioner, therefore, feared for his life.  T: 808.  As a result, he shot Walter.  T: 802.

At the close of Petitioner's case, Petitioner's counsel asked the judge to consider the lesser included offenses of manslaughter in the first degree, manslaughter in the second degree, criminally negligent homicide, assault in the first degree, assault in the second degree, and criminal possession of a weapon in the third degree.  T: 904-05.  Petitioner's counsel also requested that the judge consider a justification defense as well as extreme emotional disturbance.  T: 905.

During summation, Petitioner's counsel again attacked Dr. Prial's testimony and argued that it was unreliable hearsay evidence.  T: 724.  Counsel argued that the state had not established causation.  T: 724.  However, Petitioner's counsel later stated that

> this case is not a whodunit [sic] because Mr. Middleton has indicated he dunn [sic] it in [sic] and it's not what [sic] a what was done because we know that he fired a shot that eventually resulted in the death of Mr. Gist.  It's not where, the only question is why.

T: 734.  Additionally, Petitioner's counsel stated that "[Petitioner] may have acted recklessly when he fired the shot that eventually caused the death of Mr. Gist."  T: 737-738.  Finally, Petitioner's counsel asked the judge to find Petitioner guilty of criminally negligent homicide "because [that] [offense] [is] the only [offense] supported by the facts, the testimony and the

law." T: 738-39.

On August 21, 2002, Judge Cowhey found Petitioner guilty of manslaughter in the first degree and two counts of criminal possession of a weapon in the second degree. T: 760-61.

### C.   **Post-Trial Proceedings**

#### 1.   *State Court Proceedings*

On October 4, 2002, Petitioner was sentenced to a determinate term of state imprisonment of 15 years for the crime of manslaughter in the first degree, and a determinate term of state imprisonment of 10 years for each count of criminal possession of a weapon in the second degree. S: 23-24. The sentences were ordered to run concurrently. S: 24. Thereafter, Petitioner filed an appeal alleging five errors: (1) the trial court erred in denying petitioner's motion to suppress physical evidence where the police had no reasonable suspicion to justify the pursuit of petitioner under the circumstances; (2) the trial court erred in denying petitioner's motion to suppress evidence of the out-of-court identification which was the result of an unnecessary, suggestive, police-arranged identification procedure; (3) Petitioner was deprived of a fair trial by the trial court's improper admission of hearsay evidence; (4) Petitioner was denied his due process right to confront witnesses against him at trial where the people's sole witness as to causation had no knowledge on which she could be fairly cross-examined; (5) the trial court erred in denying Petitioner's motion for a trial order of dismissal where the evidence adduced at trial was legally insufficient to support Petitioner's conviction for homicide as a matter of law. (Respondent's Memorandum of Law, herein "Resp't Mem. Of Law", at Ex. B)

On April 30, 2004, the Appellate Division affirmed the trial court's conviction. (Resp't Mem., Ex. D). Specifically, the court held that Mr. King's identification was merely

confirmatory.  Therefore, the issue of suggestiveness was irrelevant.  Id.  Also, considering the hospital records admitted into evidence and the medical examiner's personal observations of the victim's body, there was sufficient evidence to support the medical examiner's determination that the gunshot wound inflicted by the Petitioner caused Walter's death.  Id.  All remaining issues were found to be either unpreserved or without merit.  Id.

Petitioner then sought leave to appeal to the New York Court of Appeals.  (Resp't Mem., Ex. E.)  Petitioner's attorney submitted a letter in support of the application for leave to appeal. Id.  Petitioner's counsel again argued that Dr. Prial's conclusions regarding the cause of death should not have been admitted as they were based on quadruple hearsay.  Id.  Additionally, because of the inadmissibility of Dr. Prial's testimony, the state had not put forth sufficient evidence to establish causation.  Id.  Lastly, Petitioner's counsel argued that the Appellate Division erred when it did not reverse the trial court's ruling regarding the show-up identification.  Id.

On July 14, 2004, The Court of Appeals denied Petitioner's request finding that there was "no question of law presented."  (Resp't. Mem., Ex. G.)

### 2.     *Federal Court Proceedings*

Petitioner, proceeding pro se, timely filed the instant habeas petition on February 23, 2005.  Petitioner alleges that his conviction was obtained in violation of his Sixth Amendment confrontation rights, in violation of his Constitutional right to proof of guilt beyond a reasonable doubt for every element of the crime, and, finally, by use of an impermissibly suggestive out-of-court identification.  (Pet. ¶ 12.)   At the time of filing, Petitioner did not file a memorandum supporting his motion.

Respondent filed an answer on May 31, 2005, requesting that the habeas petition be denied for failure to raise any constitutional issues and for lack of merit.  (Resp't Mem.) Thereafter, Petitioner filed a reply on November 21, 2005, further addressing the issues raised in his habeas petition.  (Petitioner's Memorandum of Law, herein "Pet. Mem. Of Law").

## II.   DISCUSSION

### A.   Standard of Review

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Under the AEDPA, all state remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus.  28 U.S.C. § 2254(b)(1)(A); see also Picard v. Connor, 404 U.S. 270, 275 (1971).  In the interests of comity and expeditious federal review, states should have the first opportunity to address and correct alleged violations of a state prisoner's federal rights.  See Coleman v. Thompson, 501 U.S. 722, 731 (1991); see also Daye v. Attorney General, 696 F.2d 186, 190-91 (2d Cir. 1982).  In pertinent part, the exhaustion requirement of the federal habeas corpus statute states:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> > (A)   the applicant has exhausted the remedies available in the courts of the State; or
> > (B)(i)   there is an absence of available State corrective process; or
> >   (ii)   circumstances exist that render such process ineffective to protect the rights of the applicant; . . .
>
> (b)(3)(c)  An applicant shall not be deemed to have exhausted the remedies available in the

courts of the State, within the meaning of this section, if he [or she] has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. §§ 2254(b)(1) and (b)(3)(3).

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion doctrine has been satisfied. See Klein v. Harris, 667 F.2d 274, 282 (1981).  First, the petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state courts. Picard v. Connor, 404 U.S. at 275-76.  "A claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.' " Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) (quoting Daye, 696 F.2d at 191).  In other words, the claim must have been presented in a way that is "likely to alert the court to [its] federal nature." Daye, 696 F.2d at 192.  The fair presentation requirement is satisfied if the state court brief contains phrases, such as "under the Due Process Clause" or "under the Constitution," that point to the petitioner's reliance on the United States Constitution as his or her legal basis for relief. Klein, 667 F.2d at 282 (internal citations omitted).  A claim may be considered "presented" even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his or her claim before the state court, did one of the following: (1) relied on pertinent federal cases that employ constitutional analysis, (2) relied on pertinent state cases that apply constitutional analysis in like fact situations, (3) asserted his or her claim in terms so particular as to call to mind specific constitutionally-protected rights; or (4) alleged a fact pattern that falls within the mainstream of constitutional litigation. See Daye, 696 F.2d at 194.

Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the

highest state court.  Klein, 667 F.2d at 282.  Where a petitioner fails to present his or her federal

constitutional claim to the highest state court, the claim cannot be considered exhausted.  Id.

(citing Williams v. Greco, 442 F. Supp. 831, 833 (S.D.N.Y.1977)).  There is, however, another

avenue available for exhaustion purposes.  A petitioner who has failed to exhaust state remedies

by pursuing a direct appeal may satisfy the exhaustion requirement by utilizing available state

methods for collaterally attacking his or her state conviction.  See Klein, 667 F.2d at 282; see

also Johnson v. Metz, 609 F.2d 1052, 1055-56 (2d Cir. 1979) (instructing habeas petitioner who

did not fairly present claim in the course of his direct appeals in New York state courts to

proceed by filing a motion to vacate judgment pursuant to New York CPL § 440.10).  If

collateral relief is denied, the petitioner may satisfy the exhaustion requirement by employing the

state appellate procedures available for review of such denial.  Id. at 282-83.  After a petitioner

has met the exhaustion requirements, a federal district court may generally hear "an application

for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state

court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of

the United States."  28 U.S.C. § 2254(a).

       "The threshold inquiry under AEDPA is whether the petitioner 'seeks to apply a rule of

law that was clearly established at the time his [or her] state-court conviction became final.' "

Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002) (quoting Williams v. Taylor, 529 U.S. 362,

390 (2000)).  When a petitioner asserts a claim that involves an issue of clearly established

federal law which was decided on its merits during the petitioner's state court appellate process,

a federal court reviewing the petitioner's request for a writ of habeas corpus must apply

AEDPA's deferential standard of review.  28 U.S.C. § 2254(d).  Under AEDPA's deferential

standard of review, a court may not grant a petition for a writ of habeas corpus unless the state court adjudication: (1) resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

Under the first prong of AEDPA, a state court decision is contrary to federal law only if a "state court arrives at a conclusion opposite to that reached by the [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts."  Williams, 529 U.S. at 413.  A decision involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule from the Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Id. at 407.

Under the second prong of AEDPA, the factual findings of state courts are presumed to be correct.  Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997).  The petitioner must rebut this presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

### B.  Petitioner's Confrontation Clause Claim

The basis for Petitioner's confrontation clause claim is not entirely clear.  The Petition itself alleges that his confrontation rights were violated as a result of Dr. Prial basing her opinion of the cause of death on information she received third or fourth hand.  (Pet. ¶ 12.) Alternatively, Petitioner's Memorandum of Law, filed in reply, alleges that his rights were

violated by not being able to cross-examine the doctors who actually examined the organs removed from Walter's body, through the introduction of Walter's medical records as evidence against him, and because Dr. Prial's testimony was based on hearsay.  (Pet. Mem. Of Law, p. 7).

### 1.   *Treating physicians and medical records*

This Court is not entirely convinced that Petitioner has exhausted his remedies for this claim as required under  § 2254(b)(1)(A).  Nevertheless, in the interests of judicial expediency and economy, and because I conclude that further review should lead to a dismissal, I will address the merits of Petitioner's claim.  See §2254(b)(2).

Pursuant to New York Civil Procedure Law, Article 45, Rule 4518(a), "[a]ny writing or record...made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of that act, transaction, occurrence, or event, if the judge finds that it was made in the regular course of any business and that it was the regular course of such business to make it, at the time of the act, transaction, occurrence, or event, or within a reasonable time thereafter."  This rule is commonly referred to as the business records exception to the hearsay rule.  Under this exception to the hearsay rule, hospital records are generally admissible in evidence as prima facie evidence of the facts contained therein "provided they bear a certification or authentication by the head of the hospital...or by a qualified physician.  Rule 4518(c), see also CPLR 23, § 2306, see People v. Annonymous, 192 Misc.2d 570, 746 N.Y.2d 894 (2002) (hospital records are generally admissible under the business records exception, so long as the information sought to be admitted is relevant to the diagnosis and treatment of the patient's ailments).  This exception to the hearsay rule applies equally to criminal cases as it does to civil cases.  People v. Swinger, 180 Misc.2d 344, 689 N.Y.S.2d 336 (1998).  Due to the

implicit reliability of business records, this exception to the hearsay rule does not conflict with the federal or state right of a defendant to confront witnesses against him or her.  People v. Annonymous, 192 Misc.2d 570, 746 N.Y.2d 894 (2002); see also People v. Nisonoff, 293 N.Y. 597, 59 N.E.2d 420, cert denied 66 S.Ct. 22, 326 U.S. 745, 90 L.Ed. 445 (1944) (confrontation rights of accused are not violated by introduction into evidence of official records, required to be kept in the normal course of business.)

The business records exception, as it has been adopted and applied by New York, does not run afoul of federal law.  Under Rule 803(6) of the Federal Rules of Evidence, medical records are considered business records and as such, are admissible into evidence, and not considered hearsay.  Additionally, unlike the certificates of laboratory analysis, which the Supreme Court concluded ran afoul of the 6th Amendment in Melendez-Diaz v. Massachusetts, _ U.S. _, 129 S.Ct. 2527, 2532 (2009), these hospital records did not qualify as "testimonial."  See Crawford v. Washington, 541 U.S. 36, 51-52 (2004).  These records fall squarely within the applicable hearsay exception, they are not testimonial, and therefore no Confrontation Clause issue is presented.  Therefore, in this case, Walter's medical records were properly admitted.

Additionally, as a practical matter, it is extremely unlikely that the emergency room doctors, had they been called, would have had any independent recollection of Walter.  As such, they would have relied on their notes and Walter's medical records.  Dr. Prial was more than qualified to read Walter's medical records and interpret their contents for the court. Additionally, Petitioner and his attorney were also free to subpoena the emergency room doctors in order to examine the doctors about the contemporaneously created records.

Therefore, I conclude, and respectfully recommend that your Honor should conclude, that

Petitioner's confrontation clause claim should be denied on its merits.

### 2. *Dr. Prial's testimony*

The issue regarding the admissibility of Dr. Prial's testimony was properly preserved and presented on appeal, including in the letter seeking leave to appeal to the New York Court of Appeals. However, the issue presented concerns the application by the trial court of the rules of evidence, and does not present an issue of constitutional dimension.

Generally, "[e]rrors by a state trial court concerning admissibility of hearsay statements are not grounds for federal habeas relief." United States ex rel. Serrano v. Smith, 394 F.Supp. 391, 392 (S.D.N.Y. 1975). However, when such an error results in the deprivation of due process, habeas relief is appropriate. Id. To constitute a deprivation of due process, the petitioner "must show that the error was so pervasive as to have denied him a fundamentally fair trial." Delio v. The People of the State of New York, No. 02-CV-5258, 2003 WL 22956953, at *11, (E.D.N.Y. 2003) (citing United States v. Agurs, 427 U.S. 97, 108, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). The inquiry then becomes whether the evidence in question was so critical as to "provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Delio, 2003 WL 22956953, at *11 ( quoting Collins v. Scully, 755 F.2d 16, 19 (2d Cir.1985)).

Review of the trial court's decision admitting Dr. Prial's testimony does not lead to the conclusion that Petitioner is entitled to relief on this ground. See Serrano, 394 F.Supp at 392. Even assuming the admission was error, the error did not deny Petitioner a fundamentally fair trial. Petitioner's purpose in attacking the admissibility of Dr. Prial's testimony is to bolster his claim that the state failed to prove that he caused Walter's death. (Pet. Mem. 9-10.) However,

16

causation was not an issue which was contested by Petitioner.  Petitioner's trial counsel affirmatively stated numerous times throughout the trial that Petitioner shot Walter and that this caused Walter's death.  T: 734, 737-38, 904-05.  Causation had therefore been conceded, and the Doctor's testimony was surplusage.  Additionally, Petitioner's counsel asked the court to find Petitioner guilty of criminally negligent homicide.  T: 738-39.  By asking the judge to find Petitioner guilty of criminally negligent homicide, rather than asking for a finding of not guilty, counsel again conceded that Petitioner caused Walter's death.  See discussion infra Part C.  Not only do those concessions make Dr. Prial's testimony not critical, they render the testimony completely irrelevant.  Therefore, Petitioner was not denied due process by its admission, even if it was improperly based on hearsay.

As such, I conclude, and respectfully recommend that your Honor should conclude, that Petitioner's hearsay claim should be denied on its merits.

### C.      Petitioner's Sufficiency of the Evidence Claim

Petitioner alleges that the prosecution failed to prove Petitioner's guilt beyond a reasonable doubt.  Specifically, Petitioner alleges that the Prosecution failed to prove the element of causation-- that Petitioner's actions ultimately caused the victim's death.  The Appellate Division addressed this issue on the merits, finding that the evidence admitted at trial was legally sufficient to support Dr. Prial's conclusion that "the gunshot wound inflicted by the defendant caused the victim's death."  (Resp't. Mem. Of Law, Ex. D).  Based upon the following, this Court is unable to find that the Appellate Division's decision was an unreasonable application of federal law.

Generally, whether there was sufficient proof to convict a person of a crime pursuant to state law is a state issue.  United States v. Hon. H. W. Follette, 257 F.Supp. 533, 534 (S.D.N.Y.

1965) (citing Grundler v. State of North Carolina, 283 F.2d 798, 801 (4th Cir. 1960)).  However, evidentiary deficiencies can rise to such a level as to create a due process issue under the Fourteenth Amendment.  Follette, 257 F.Supp. at 534, Grundler, 283 F.2d 881.  It is then that a state prisoner can seek relief from the federal courts through a habeas corpus petition.  Id.  To obtain a writ of habeas corpus, the Petitioner must prove that given the evidence produced at trial, " 'no rational trier of fact could have found proof of guilt beyond a reasonable doubt.' " Fama v. Comm'r of Corr. Serv., 235 F.3d 804, 811 (2d Cir. 2000) (quoting Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).  The reviewing federal court is required to "consider the evidence in the light most favorable to the prosecution and make all inferences in its favor."  Fama, 235 F.3d at 811, see also Jackson, 443 U.S. 319, 99 S.Ct. 2789.  However, the reviewing court is not required to determine whether it in fact believes the evidence introduced at trial established guilt beyond a reasonable doubt.  Id., see also Jackson, 443 U.S. 318-19, 99 S.Ct. 2789.

In this case, Petitioner argues that the prosecution failed to prove that he caused the victim's death beyond a reasonable doubt.  Again, Petitioner's trial counsel conceded causation by admitting that Petitioner shot Walter, and stating that it was this act that caused Walter's death.  T: 734, 737-38, 802, 904-05.  Moreover, Petitioner's trial counsel asked the court to find Petitioner guilty of criminally negligent homicide.  T: 738-39.  Under New York Penal Law § 125.10 "a person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person."  By asking the judge to find Petitioner guilty of criminally negligent homicide, counsel again conceded that his client caused Walter's death.  As such, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact had no choice but to find that Petitioner caused Walter's death.

18

Therefore, I conclude, and respectfully recommend that your Honor should conclude, that Petitioner's sufficiency of the evidence claim be denied on its merits.

### D.   Petitioner's Impermissibly Suggestive Pretrial Identification Claim

Lastly, Petitioner argues that his due process rights were violated by the admission into evidence of Mr. King's identification of Petitioner.  Petitioner believes the admission was improper because Mr. King's identification of Petitioner was the result of impermissibly suggestive procedures utilized by the police.  (Pet. Mem. of Law 15.)  The Appellate Division addressed this issue on the merits, finding that due to the witness's familiarity with Petitioner, "the identification was merely confirmatory and the issue of suggestiveness was irrelevant." (Resp't. Mem. Of Law, Ex. D).  Based upon the following, this Court is unable to find that the Appellate Division's decision was an unreasonable application of federal law.

An impermissively suggestive identification does not, in and of itself, violate any constitutional rights.  Wray v. Johnson, 202 F.3d 515, 524 (2d Cir. 2000) (citing Manson v. Brathwaite, 432 U.S. 98, 113 n. 13, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)).  Rather, the question is the extent to which the suggestive identification affects the overall fairness of the trial.  Wray, 202 F.3d at 524, Manson, 432 U.S. at 113, n. 13.  To make that determination, the Court is to utilize the harmless-error analysis.  Id. at 525.  If the error involved in the improper admission of the identification is found to be harmless, a person is not entitled to habeas relief.  Id.

An error is considered harmless "if it did not have a 'substantial and injurious effect or influence in determining the jury's verdict.'"  Id. (quoting Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946))).  The factors to consider when determining whether an error had a substantial and injurious effect or influence are the importance of the subject

testimony and the overall strength of the prosecution's case.  Id. at 526.  As to the former, there

are three important considerations: whether the testimony "bore 'on an issue that is plainly

critical to the jury's decision,'  Hynes v. Coughlin, 79 F.3d 285, 291 (2d Cir.1996); whether the

testimony was material to the establishment of the critical fact or whether it was instead

corroborated and cumulative, see e.g., Brecht v. Abrahamson, 507 U.S. at 639, 113 S.Ct. 1710;

and whether the wrongly admitted evidence was emphasized in arguments to the jury."  Id.

In Wray, the Court ultimately found that the subject out-of-court identification was

improperly admitted during trial.  Id. At 524.  Further, because the wrongly admitted

identification dealt with the sole issue of the case, the identity of the gunman, the admission was

not harmless error and the Petitioner was entitled to habeas relief.  Id. at 530.

This case is clearly distinguishable.  In this case, as in Wray, the alleged suggestive

identification deals with the identity of the gunman.  However, in this case, Petitioner conceded

during trial that he shot Walter.  T: 802.  Identity was not an issue to be decided by the trier of

fact.  Mr. King's identification of Petitioner was cumulative and inessential to the case and had

no bearing on the overall strength of the prosecution's case.  Therefore, even if the out-of-court

identification was impermissibly suggestive and should not have been admitted, its admission

was harmless error.

Accordingly, I conclude, and respectfully recommend that your Honor should conclude,

that Petitioner's identification claim should be denied on its merits

### III.   **CONCLUSION**

For the reasons stated above, I conclude, and respectfully recommend that Your Honor

should conclude, that the instant habeas petition should be dismissed in its entirety.  As the

Petition presents no questions of substance for appellate review, I conclude, and respectfully

recommend, that a certificate of probable cause should not issue.  Rodriguez v. Scully, 905 F.2d 24 (2d Cir. 1990) (*per curiam*); Alexander v. Harris, 595 F.2d 87, 90-91 (2d Cir. 1979).  I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. §1915(a) that an appeal from this order would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438 (1962).

## IV.    NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b)(2), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Stephen C. Robinson, at the United States District Court, Southern District of New York, United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Robinson.

Dated:                      , 2010
        White Plains, NY

Respectfully submitted,

LISA MARGARET SMITH
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:
Stephen C. Robinson, U.S.D.J.

22